# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Pink Apple iPhone<br>Model: Unknown<br>Seized as FP&F: 2024255400011601 Item: 0007 | Case No. 24M8351 |

**FILED**
Apr 29 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ VeronicaCota  DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the     Southern     District of     California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
     telephone     *(specify reliable electronic means)*.

Date: 04/26/2024

*Judge's signature*

City and state: El Centro, California     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**  Pink Apple iPhone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0007
Seized from Davonte Lorenzo STEWART
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 25, 2024, up to and including April 9, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

**AFFIDAVIT**

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Black Vortex Cellphone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0005
Seized from Jose Javier AGUILA
**(Target Device #1)**

**A-2:** Green Vortex Cellphone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0006
Seized from Jose Javier AGUILA
**(Target Device #2)**

**A-3:** Pink Apple iPhone Cellphone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0007
Seized from Davonte Lorenzo STEWART
**(Target Device #3)**

**A-4:** Gold Motorola Cellphone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0008
Seized from Ausencio AGUILAR-Hernandez
**(Target Device #4)**

**A-5:** Purple ZTE Cellphone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0009
Seized from Nicolas HERNANDEZ-Mendez
**(Target Device #5)**

as further described in Attachments A-1 to A-5, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Davonte Lorenzo STEWART (STEWART) and Jose Javier AGUILA (AGUILA) for transportation of illegal aliens Ausencio AGUILAR-Hernandez (AGUILAR) and Nicolas HERNANDEZ-Mendez (HERNANDEZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from STEWART, AGUILA, and the Material Witnesses on or about April 8, 2024, incident to the arrest of STEWART, AGUILA, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

2

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the

3

illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On April 8, 2024, the Calexico Station's Anti-Smuggling Unit (ASU) was conducting surveillance in the East Desert of the Calexico Border Patrol Station's Area of Responsibility, approximately 25 miles east of the Calexico Port of Entry. In this area, there is a fence on the International Boundary that is approximately 20 feet tall. The All-American Canal (AAC) runs parallel to the International Boundary in this area and is approximately one-half mile north of the border. Interstate 8 (I-8) is approximately three-quarters of a mile north of the International Boundary and runs parallel to it as well.

11. At approximately 1:25 p.m., BPA J. Stefan, assigned to the Remote Video Surveillance System (RVSS) room, observed two suspected illegal aliens running north from the border towards the AAC. BPA Stefan relayed this information via service radio to ASU agents in the field and maintained visual of the suspected illegal aliens as they swam across the ACC and continued north towards I-8. The suspected illegal aliens reached the south side of I-8 and concealed themselves in some brush approximately one-half mile east of the Caltrans compound.

12. At approximately 1:53 p.m., BPA Stefan advised via service radio that a dark sedan, later determined to be a dark blue Honda Civic, was slowing down close to where the suspected illegal aliens were concealing themselves and the suspected illegal aliens ran north towards the vehicle. BPA W. Carlton, driving an unmarked Border Patrol Service

5

vehicle near the location, also observed the suspected illegal aliens running to I-8 and boarding the Honda.

13. BPA Carlton pulled in behind the Honda and ran record checks through El Centro Sector's Communications Center. BPA Carlton continued following the Honda, constantly relaying speed, and direction of travel via service radio. BPA O. Ismail and BPA A. Gaytan relayed via service radio that they were set up to deploy their service issued Vehicle Immobilization Devices (VID) just east of the Highway 98 exit if it became necessary.

14. At approximately 2:18 p.m., BPA Carlton and BPA T. Donahue, driving a fully marked Border Patrol Service vehicle, activated their emergency lights and sirens to signal for the Honda to stop. The Honda continued driving west for approximately one mile at approximately 65 miles per hour. Once the Honda approached the on ramp for Highway 98, BPA Gaytan and BPA Ismail deployed their VIDs onto the road in front of the Honda. The Honda drove over the deployed VIDs and the front tires of the Honda deflated before the Honda came to a stop in the slow lane of I-8.

15. BPA Ismail contacted the driver, later identified as STEWART, and identified him as a United States Citizen. BPA Gaytan contacted the front seat passenger, later identified as AGUILA, and identified him as a United States Citizen. BPA A. Mills contacted the two back seat passengers, later identified as Ausencio AGUILAR-Hernandez, and Nicolas HERNANDEZ-Mendez, and determined both of them to be citizens of Mexico illegally present in the United States.

16. During an inventory search of the vehicle, BPA Donahue located a loaded SIG SAUER Mosquito .22 caliber pistol. The pistol was located inside a backpack in the trunk. The loaded pistol had a magazine that contained 10 rounds of .22 caliber ammunition and the backpack had an additional 85 loose rounds inside. The pistol was secured and seized as evidence. STEWART, AGUILA, AGUILAR and HERNANDEZ were transported to the Calexico Border Patrol Station for further processing.

|   |   |
|---|---|
| 1 | 17. At the Border Patrol Station, STEWART was advised of his Miranda rights. STEWART stated he understood his rights and agreed to answer questions without the presence of an attorney. STEWART stated he drove from Fontana to Yuma to pick up his friend who offered him 100 U.S. Dollars to drive him back home to Fontana. STEWART admitted picking up two individuals but was unable to provide an explanation for stopping to pick up two individuals from the highway. STEWART denied any connection to the loaded handgun that was found inside the backpack in the trunk of his vehicle. |

17. At the Border Patrol Station, STEWART was advised of his Miranda rights. STEWART stated he understood his rights and agreed to answer questions without the presence of an attorney. STEWART stated he drove from Fontana to Yuma to pick up his friend who offered him 100 U.S. Dollars to drive him back home to Fontana. STEWART admitted picking up two individuals but was unable to provide an explanation for stopping to pick up two individuals from the highway. STEWART denied any connection to the loaded handgun that was found inside the backpack in the trunk of his vehicle.

18. At the Border Patrol Station, AGUILA was advised of his Miranda rights. AGUILA stated he understood his rights and agreed to answer questions without the presence of an attorney. AGUILA stated he called STEWART and offered him 100 U.S. Dollars to pick him up and take him back to Sen Bernardino. AGUILA stated he was sleeping in the front passenger seat when his friend picked up two individuals. AGUILA denied any connection to the loaded handgun that was found inside the backpack in the trunk of the vehicle.

19. Material Witness AGUILAR stated he is a citizen of Mexico. AGUILAR stated that arrangements were made for him before he left Mexicali to be smuggled to the United States illegally for $10,000 U.S Dollars. AGUILAR stated he was going to King City. AGUILAR stated the color of the load vehicle was blue.

20. Material Witness HERNANDEZ stated he is a citizen of Mexico. HERNANDEZ stated that arrangements were made for him before he left Mexicali to be smuggled to the United States illegally for $170,000 Mexican Pesos upon his arrival to King City. HERNANDEZ stated the color of the load vehicle was blue.

21. During a search incident to arrest of STEWART, AGUILA and the Material Witnesses, Agents located five cellphones. One black Vortex cellphone (Target Device #1) was located on AGUILA's person by BPA A. Gaytan and Agent Carlton located a green Vortex cellphone (Target Device #2) in the front passenger door pocket of the Honda. AGUILA claimed ownership of both of these cellphones.  BPA T. Donahue found a pink Apple iPhone (Target Device #3) in the Honda Civic driver's floorboard and STEWART

claimed ownership of this cellphone. A gold Motorola cellphone (Target Device #4) was found by Agent Carlton in the front passenger door pocket of the Honda and AGUILAR claimed ownership of this phone. Agent Ramirez located a purple ZTE Cellphone (Target Device #5) in the back seat of the Honda and HERNANDEZ claimed ownership of this phone. All cellphones were seized as evidence.

22. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on March 25, 2024, up to and including April 9, 2024, the day after the arrest of STEWART, AGUILA, and the Material Witnesses.

## METHODOLOGY

23. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic

hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//
//

# CONCLUSION

26. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that STEWART, AGUILA, and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by STEWART, AGUILA, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 26th day of April, 2024.

_____  3:38 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**         Black Vortex Cellphone
         Model: Unknown
         Seized as FP&F: 2024255400011601 Item: 0005
         Seized from Jose Javier AGUILA
         **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>A-2:</u>	Green Vortex Cellphone
	Model: Unknown
	Seized as FP&F: 2024255400011601 Item: 0006
	Seized from Jose Javier AGUILA
	**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**          Pink Apple iPhone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0007
Seized from Davonte Lorenzo STEWART
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:** Gold Motorola Cellphone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0008
Seized from Ausencio AGUILAR-Hernandez
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**     Purple ZTE Cellphone
Model: Unknown
Seized as FP&F: 2024255400011601 Item: 0009
Seized from Nicolas HERNANDEZ-Mendez
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 25, 2024, up to and including April 9, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.